## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

| | | |
|---|---|---|
| **CECIL C. JONES** | * | **CIVIL ACTION NO. 09-0769** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **WARDEN LOUISIANA**<br>**STATE PENITENTIARY** | * | **MAGISTRATE JUDGE**<br>**KAREN L. HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is an opposed petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. #1) filed by petitioner Cecil Cleo Jones ("Jones"). For reasons stated below, it is recommended that the petition be **DENIED**.

## BACKGROUND

In March 2003 the Ouachita Parish Grand Jury indicted Jones on a charge of second degree murder. Following trial by jury that commenced on September 26, 2005, Jones was found guilty as charged. On November 7, 2005, he was sentenced to life imprisonment. After exhausting his remedies in state court, Jones filed the instant petition. Jones contends that the trial court erred in: (1) denying a motion to quash based on the failure of the state to bring the case to trial within two years; (2) denying a motion to suppress an incriminating statement that Jones made to the police; (3) conducting an improper inquiry into Jones' request to represent himself and for holding him in contempt for requesting to represent himself; (4) allowing hearsay and double hearsay testimony; (5) submitting instructions on the aggressor doctrine to the jury; (6) denying a motion for a mistrial based on impermissible testimony about Jones' prior criminal history; (7) finding him guilty of second degree murder based on insufficient evidence; and (8) denying him the eligibility to earn good time.

Jones also raises several post-conviction claims for relief. Specifically, he contends that

the state court erred in: (9) denying Jones' motion for release from custody without bail; (10) failing to conduct a *Faretta* colloquy during Jones' pro se motion in arrest of judgment; and (11) allowing the state to play prior recorded statements from some of the state's witnesses to refresh their memories.  Jones also argues that he was denied the effective assistance of counsel by his trial attorney, Michael Courteau, for the following reasons: (12) failure to object to or to cross-examine the police officer who received Jones' incriminating statement on the basis that the statement was made involuntarily; (13) failure to investigate the state's witnesses; and (14) interference with Jones' right to testify on his own behalf.  Jones' final claim (15) is that the cumulative effect of all the errors violated his right to a fair trial.

The underlying facts in this case have been set forth by the Second Circuit of the Louisiana Court of Appeal, as follows:

> On Saturday night, January 9, 1999, Chad Guy and his brother, Christopher Guy, were at Faces Lounge, a nightclub in Monroe.  Sometime after midnight, Chad and Christopher were standing outside in front of the club when Monya Stewart, who was the girlfriend of Danny Wilson, a.k.a. "Debow," walked past Chad to re-enter the club through the front door.  Chad grabbed Monya's hand and flirted with her.  Monya, who was not personally offended, let Chad know that she had a boyfriend and walked back inside the club.  Debow, Cecil Jones (defendant), and a young man known as "Keydo" were also standing outside the club in a location where they could see the brief exchange between Monya and Chad.  While outside the club, a bouncer heard the sound of breaking bottles and saw a fight between five or six people, which prompted him to go inside the club to call the police.  About a minute after Monya went back into the club, she heard a "pop."  She looked outside and saw the victim on the ground in front of the club entrance.
>
> Chad died from a single gunshot wound to his lower back.  A large caliber silver-jacketed bullet was recovered from Chad's abdominal cavity during the autopsy.
> Monroe Police Officer James Willis responded to the call and observed many people outside the club.  The victim lay on the ground about 10 to 15 feet from the club's entrance.  After calling for an ambulance, Officer Willis interviewed the victim's brother, and also recovered one (and only one) 9mm shell casing from the general vicinity of the body.
>
> Detective Thomas Staten took photographs of the scene, and recorded statements from Monya Stewart, Carlitha Jones, Fermia [sic] Mack, and Lolitha Mitchell.  Mitchell and Mack identified defendant as the shooter in their recorded statements.  Both gave

2

contradictory trial testimony (six years later) that they did not actually see the defendant shoot the victim.  At trial, they testified that they only told the police what they had heard.

After listening to her recorded statement at trial, Mitchell admitted telling police that when the fight was over, defendant "just came out of the blue" and started shooting the gun.  Mitchell further admitted telling police that the victim was not armed.  Likewise, after hearing her recorded statement at trial, Mack admitted telling police that the defendant "came around and shot the boy," who did not have a gun and was not threatening anyone.

Carlitha Jones testified at trial that she did not witness the shooting, but admitted telling police in her statement (contemporaneous with the shooting) that Mitchell told her that she (Mitchell) saw the defendant with a gun.  She further testified at trial that after the fight began, she saw the victim's brother, Christopher, run off and return with a gun.  At trial, Stewart, Jones, and Mitchell all placed defendant at the club on the night of the shooting.

There were other examples of forgetfulness or perjury at the trial.[1]

On the Monday after the shooting, Det. Staten received a telephone call from Ben Gibson, who had discovered a black 9mm Glock pistol and bullets hidden in a bag under a bed in his home.  Gibson testified to the following:

(1) Defendant arrived at his home on Sunday evening to spend the night, and left early Monday morning.
(2) Gibson had cleaned his house that week and knew that there was not a gun under the bed before defendant came to his house.
(3) He discovered the gun when his cigarette lighter rolled under the bed and he felt a bump under the carpet.
(4) He immediately called the police to retrieve the weapon.
(5) Nobody but the defendant had been in his house that weekend.

Michael Stelly, an expert in firearm identification, performed tests and concluded that the 9mm Glock pistol found in Gibson's house fired the shell casing found outside the club on the night of the shooting and the slug recovered from the victim's body.

A warrant was issued for defendant's arrest, but the Monroe Police Department could not locate him.  In January 2003, Tulsa, Oklahoma Police Detective Jeff Gatwood ("Gatwood") notified Monroe police that defendant was in their custody.  While awaiting

---

[1] The club's bouncer testified at trial that he heard "about" two or three gunshots.  However, when confronted at trial with his prior statements, contemporaneous with the shooting, that he only heard one shot, he did not deny having said this to the police on the night of the shooting.

the results of fingerprints search to determine defendant's identity, the defendant had admitted to Officer Gatwood that:

(1) He was Cecil Jones from Monroe.
(2) He was wanted for murder in Louisiana.
(3) He was drunk, got into a fight and pulled out his gun only because the other man pulled out his gun.
(4) His gun went off during a physical struggle between them.
(5) The bullet struck the man in the side, killing him.

*Louisiana v. Jones*, 942 So. 2d 1215, 1220-22 (La. Ct. App. 2006).

## LAW AND ANALYSIS

*Habeas corpus* relief is available to a person who is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254.  The standard of review is set forth in 28 U.S.C. § 2254(d):

(d) An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state-court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal *habeas* court may grant the writ only if the state court "identifies the correct governing legal principle from . . . [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal *habeas* courts presume such determinations to be correct; however, the petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)

**Claim One - Motion to Quash**

Prior to trial, Jones filed a motion to quash based on the state's failure to commence his trial in a timely fashion. The relevant statute provides that no trial in a non-capital felony case shall be commenced more than two years from the date of institution of prosecution. LA. CODE CRIM. PROC. ANN. art. 578(A)(2). In his first claim, Jones contends that the trial court incorrectly interpreted LA. CODE CRIM. PROC. ANN. art. 578(A)(2) in denying his motion to quash because more than two years had elapsed between his indictment and his trial.

The undersigned first observes that "federal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Indeed, under 28 U.S.C. § 2254, the relevant inquiry is not whether the trial court's denial of the motion to quash violated the Louisiana statute but whether it violated Jones' federal constitutional rights. *See Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981).

Assuming that Jones intended to raise a federal claim on this matter, Jones is nevertheless

5

barred from raising it on the basis of the independent and adequate state ground doctrine.  That doctrine provides that "a claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision." *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001).  "A state ground is independent if the last reasoned state court opinion clearly and expressly indicates that its judgment is independent of federal law." *Reed v. Scott*, 70 F.3d 844, 846 (5th Cir. 1995).  A state ground is adequate "only if it was firmly established and regularly followed" at the time it was applied.  *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1977).  Moreover, the petitioner bears the burden of demonstrating that the state has failed to apply the relied-upon state ground to claims "identical or similar to those raised by the petitioner himself."  *Id.*  Finally, even if a state court judgment rests on an independent and adequate state rule of procedural default, a federal court may nevertheless review the defaulted claim if the petitioner either shows "cause" for the default and "prejudice attributed thereto" or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice" because the petitioner is actually innocent.  *Alba v. Thaler*, 2009 U.S. App. LEXIS 22263, at *8 (5th Cir. Oct. 8, 2009).

A review of Jones' case yields the following timeline: On March 14, 2003, the state filed its indictment against Jones.  On August 25, 2003, Jones filed a motion to quash his arrest warrant.  On November 3, 2003, the trial court denied Jones' motion to quash his arrest warrant. On August 5 and August 17, 2004, Jones filed motions to suppress the incriminating statement he made to Detective Gatwood.  On September 26, 2005, the trial court denied the motions to suppress and commenced Jones' trial.

Clearly, more than two years elapsed between the date of Jones' indictment (March 14, 2003) and the commencement of his trial (September 26, 2005).  However, LA. CODE CRIM. PROC. ANN. art. 580 provides, "When a defendant files a motion to quash or other preliminary plea, the running of the periods of limitation established by Article 578 shall be suspended until the ruling of the court thereon; but in no case shall the state have less than one year after the ruling to commence the trial."  Moreover, contrary to Jones' contentions, a motion to suppress is a preliminary plea under Louisiana law.  *State v. Murray*, 731 So.2d 480, 482 (La. 1999).

In calculating the amount of time that had elapsed between Jones' indictment and the commencement of his trial for purposes of articles 578 and 580 of the Louisiana Code of Criminal Procedure, the Louisiana appellate court - the last state court to consider this matter - correctly suspended the prescriptive period for Jones' motion to quash the arrest warrant and his motions to suppress, and then observed that only 440 days elapsed between Jones' indictment and the commencement of his trial.  *Louisiana v. Jones*, 942 So. 2d at 1224.  The state appellate court therefore articulated an independent state ground in denying Jones' motion to quash.  Furthermore, Jones did not meet his burden of demonstrating that this state ground was not adequate because he failed to present the court with any instances where Louisiana courts failed to apply articles 578(A)(2) and 580 to claims "identical or similar to those raised by" himself.  *See Stokes v. Anderson*, 123 F.3d at 860.  Jones most likely failed to make this showing because Louisiana courts routinely applied articles 578(A)(2) and 580 at the time of Jones' motion to quash in the same manner that they applied the statutes to Jones.  *E.g.*, *State v. Dillon*, 947 So. 2d 86, 89 (La. Ct. App. 2006); *State v. Allen*, 871 So. 2d 1097, 1102 (La. 2004).  Accordingly, the appellate court relied on an independent and adequate state ground to deny Jones' motion to quash.  Furthermore, the appellate court's judgment on this matter is not subject to review under

7

the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the independent and adequate rule because Jones failed to make any showing that either of these exceptions applied to his case.

**Claim Two - Motion to Suppress**

Jones filed two motions to suppress his incriminating statement to Detective Gatwood. His first motion contended that the statement was involuntary in that it was obtained in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), and his second motion set forth the additional claim that he was under the influence of marijuana at the time he made the statement.  Jones argues that the trial court erred in denying the first motion.

The Fifth Amendment privilege against self-incrimination prohibits admitting statements given by a suspect during custodial interrogation without a *Miranda* warning.  *Miranda v. Arizona*, 384 U.S. at 444.  "A suspect is in custody for purposes of *Miranda* when he is placed under formal arrest or when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest."  *United States v. Gonzalez*, 121 F.3d 928, 939 n.6 (5th Cir. 1997). Interrogation, for purposes of *Miranda*, includes "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).  Thus, spontaneous statements initiated by the defendant and not made in response to questions posed by the police do not qualify as statements made during interrogation.  *Pennsylvania v. Muniz*, 496 U.S. 582, 603-04 (1990).

At the hearing on the motions to suppress, Gatwood testified that he arrested Jones in a motel room on Interstate 44 in Tulsa County for possession of marijuana.  R., 584.  Gatwood

then transported Jones to a Tulsa police station where he brought Jones to an interview room.  *Id.*

at 587.  Gatwood testified that at this point in his encounter with Jones he had not questioned

Jones regarding any matter besides his identity.  *Id.*  Gatwood further testified that in the

interview room,

> Mr. Jones was real upset, he started to cry and he said you're going
> to find out I'm wanted out of Monroe, Louisiana for murder that
> occurred outside of a nightclub.  He said that he was drunk, he got
> in a fight with an individual, this individual pulled out a handgun,
> Mr. Jones then pulled out a 9mm Glock that he had on his person,
> there was a struggle between the two individuals and he shot the
> subject in the side causing death.

*Id.* at 588.  Gatwood testified that prior to Jones' statement he did not have any reason to suspect

that Jones was wanted for murder in another jurisdiction.  *Id.*  Gatwood also testified that Jones'

statement was "spontaneous" in that it was not a response to a question that Gatwood asked.  *Id.*

at 589.  Finally, on cross-examination, Gatwood testified that approximately two hours elapsed

between Jones' arrest and his statement, during which neither Gatwood nor any other officer in

the Tulsa Police Department read Jones his *Miranda* rights.  *Id.* at 591, 595.

Jones also testified at the hearing.  He stated that he did not make any statements to any

officers in the Tulsa Police Department after he was arrested.  *Id.* at 598.

The trial court made several findings at the hearing on Jones' motions to suppress.  First,

the court found that Jones actually made a statement to Gatwood.  *Id*. at 610.  In reaching this

finding, the court contrasted Gatwood's testimony with Jones' testimony.  It noted that Gatwood

"appears to have no basis or reason to lie to the Court" as well as "no compelling interest

whatsover to mislead the Court."  *Id.* at 609.  Furthermore, the court noted that Gatwood

"appears forthright in his testimony, very clear and coherent in his expression.  He did not appear

to be nervous, he looked at the Court, looked at counsel in responding." *Id.* at 610.  On the other hand, the court noted that Jones "is a three time convicted felon." *Id.* at 609.  In addition, Jones "sometimes mumbled his responses" and "did not appear to be credible in his responses." *Id.* at 610.

The trial court then found that Jones made his statement spontaneously for purposes of *Miranda*.  The court noted that it had been presented "with no testimony indicating that there was behavior by the police officers that constituted direct questioning as to the facts of this case nor were there circumstances that approached the functional equivalent of interrogation related to this court." *Id.* at 614.

Finally, the trial court reached the issue of whether Jones' statement was involuntary because he was under the influence of marijuana at the time he made the statement.  Under both Louisiana and federal law, an incriminating statement may be inadmissible if the defendant was under the influence of drugs when he made the statement.  *Jackson v. Denno*, 378 U.S. 368, 391-92 (1964); 434 *State v. Ashley*, No. 44,655-KA, 2009 La. App. LEXIS 1640, at * 32 (La. App. Ct. Sept. 23, 2009).  Citing the persuasiveness of Gatwood's testimony regarding Jones' coherency, the court found that Jones was not under the influence of marijuana when he made his statement.

As noted above, the state trial court entered extensive factual findings concerning the existence of the incriminating statement, the spontaneous nature of the statement, and the coherence of Jones at the time he made the statement.  These factual findings are entitled to the presumption of correctness under 28 U.S.C. § 2254(e).  To overcome this presumption, Jones must rebut these factual findings by clear and convincing evidence.  28 U.S.C. § 2254(e)(2)(B).

Rather than directly rebut the findings of the trial court, Jones essentially argues that his mere presence in an interview room in the Tulsa Police station when he made the incriminating

10

statement qualifies as custodial interrogation, and therefore renders the statement inadmissible because Gatwood never provided him a *Miranda* warning.  However, although Jones was most likely in custody when Gatwood brought him to the interview room, Jones does not point to "any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response" which would demonstrate that he was subject to interrogation for purposes of *Miranda*.  *See Pennsylvania v. Muniz*, 496 U.S. at 603-04.  Moreover, Jones does not dispute the state court's factual finding that neither Gatwood nor any other officer in the Tulsa Police Department questioned Jones regarding the facts of this case before Jones made his incriminating statement.  Accordingly, the undersigned must accept as conclusive the state court's determination that the challenged statement was spontaneous, and therefore voluntary.  Jones is not entitled to any relief on this claim.

**Claim Three - Self-Representation**

With his next claim, Jones contends that the trial court erred in holding him in contempt for asserting his right to self-representation and for failing to conduct an inquiry into his request to represent himself.  The undersigned will consider each of these claims in turn.

### A. Contempt of Court Finding

On September 22, 2005 - four days before trial commenced - the trial court adjourned to respond to Jones' pro se letter to the trial judge, Judge Wendell Manning, requesting a copy of the transcript of the hearing on the motion to quash and notifying the judge that he planned to appeal the decision.  At the hearing regarding Jones' *pro se* letter, Judge Manning advised Jones that he could not file *pro se* pleadings as long as he was represented by his appointed counsel, Michael Courteau.  R., 276.  Courteau then notified Judge Manning that Jones wanted to represent himself.  *Id.* at 277.  After a sidebar with Courteau and the state prosecutor, the

following exchange between Judge Manning and Jones then occurred:

> The Court: Court is not going to honor this pro se pleading filed in proper person.  You have an attorney.  You will be represented -
>
> Mr. Jones: I don't want [Courteau] to represent me.
>
> The Court: You will be represented -
>
> Mr. Jones: I want to represent myself.
>
> The Court: If you interrupt me you will be held in contempt.  He will represent you in this matter until I say otherwise.  You understand?
>
> Mr. Jones: I've been -
>
> The Court: Do you understand, Sir?
>
> Mr. Jones: I understand what you saying, Judge Manning.  I been in there three years. [Courteau] ain't come and seen me - I could count on one hand the number of times he came.  That ain't no fair counsel right there.  So why shouldn't I be able to write in what I feel is right for myself.
>
> The Court: Sir, [Courteau's] given you advice.  He's told the Court what he plans to do.  He told you what he plans to do.
>
> Mr. Jones: I don't want him to do nothing for me.
>
> The Court: If you interrupt me again - that's it.  He's to be given 160 days for contempt for interrupting the Court after repeatedly being asked not to do so.  And that is consecutive to any time he may serve on anything in this matter.  In this case.  And that's day for day.  Now, my ruling is going to stand.  You're represented by Mr. Courteau.  We're going to trial next week.  As you have requested.
>
> Mr. Courteau: For the record, my [sic] I speak with the Defendant prior to trial this weekend.  If he wishes me to file a motion to allow him to represent himself against my advise [sic] I will do so.
>
> The Court: That will need to be heard on Monday.  If that's to be done.  If he's requesting that.  Thank you.

*Id.* at 278-79.

The Sixth Amendment protects a defendant's right to represent himself in a criminal trial.

*Faretta v. California*, 422 U.S. 806, 832 (1975).  Accordingly, a trial court violates a defendant's

Sixth Amendment rights when it holds him in contempt for asserting his right to self-representation.  *See id.* at 838 (Burger, C.J., dissenting).

The portion of the transcript excerpted above indicates that Judge Manning held Jones in contempt not because he asserted his right of self-representation, but because he found that Jones interrupted him, despite being warned not to do so.  Under 28 U.S.C. § 2254(e), a presumption of correctness attaches to this finding.  Jones cannot overcome this presumption because he does not point to any evidence which demonstrates that Judge Manning held him in contempt for any reason other than his disrespectful courtroom conduct.

**B. Improper Inquiry into Jones' Request to Right of Representation**

In light of Jones' requests to proceed *pro se*, Courteau filed a motion to withdraw from representing Jones and to allow Jones to represent himself.  R., 879.  The trial court conducted a hearing on this motion immediately prior to trial, during which the following exchange between Judge Manning and Jones occurred:

> The Court: Now, Mr. Jones, Mr. Courteau had filed a motion to allow you to represent yourself in this matter.  You understand that?
>
> Mr. Jones: Yes, sir.
>
> The Court: That was filed after he had talked with you about your trial that's coming up.  You understand that?
>
> Mr. Jones: Yes, sir.
>
> The Court: Now, you understand the charge you're facing here?
>
> Mr. Jones: Yes, sir.
>
> The Court: What it - what - what charge are you facing?  What have you been charged with?
>
> Mr. Jones: Second degree murder.
>
> The Court: And do you know what sentence if you're found guilty of second degree murder do you know what sentence that carries with it?

Mr. Jones: Yes, sir.

The Court: What is the sentence?

Mr. Jones: Ah, life.

The Court: Life without benefit of probation, parole or suspension of sentence.  Do you understand that?

Mr. Jones: Yes, sir.

The Court: It's a very serious charge.  You understand that?

Mr. Jones: Yes, sir.

The Court: Now, you understand that by representing yourself you would be going to trial against an experienced - experienced attorneys here, with many years of trial courtroom work and courtroom experience.  They are familiar with the rules of evidence.  They know how to question witnesses.  Now, you don't have a background in the rules of evidence do you?

Mr. Jones: No, sir.

The Court: You understand that you'd be in a disadvantage?  In other words, you'd be going against someone with more knowledge of how to conduct a trial if you were to represent yourself.  Now, do you understand that risk?

Mr. Jones: Yes, sir.

The Court: And so I want to ask you, do you still want to represent yourself, or do you want to go to trial with an attorney?

Mr. Jones: Go with attorney.

The Court: I couldn't hear you, sir?

Mr. Jones: Go with attorney.

The Court: All right.  So you are asking Mr. Courteau then to withdraw his motion to allow you to represent yourself?

Mr. Jones: Yes, sir.

The Court: Thank you, sir.

R., 880-82.

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel." *Faretta*, 422 U.S. at 835. As a result, the Sixth Amendment requires the defendant to "knowingly and intelligently" waive those benefits. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). For a waiver of the right to counsel to be valid, the defendant must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835. The Supreme Court's decisions indicate that the information a defendant must possess to waive his right to counsel "depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceedings." *Tovar*, 541 U.S. at 88. However, the Supreme Court has not "prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel." *Iowa v. Tovar*, 541 U.S. 77, 88 (2004); *see also McDowell v. United States*, 484 U.S. 980 (1987) (White, J., dissenting).

In the excerpted colloquy between Judge Manning and Jones, Judge Manning confirmed that Jones was aware of the charge he faced at trial and the sentence he would receive if convicted. Judge Manning also informed Jones that representing himself at trial was disadvantageous because he was not familiar with either the rules of evidence or trial advocacy while opposing counsel would be. After being apprised of the risks involved in self-representation, Jones stated that he no longer wanted to represent himself at trial and that he instead wanted to be represented by Courteau.

The undersigned finds that the state trial court did not unreasonably apply *Faretta* and related Supreme Court precedent in violation of 28 U.S.C. 2254(d)(1) when it inquired into Jones' request to represent himself. Judge Manning clearly made Jones aware of "the dangers and disadvantages of self-representation." *Faretta*, 422 U.S. at 835. Jones is not entitled to any

15

relief on this claim.

**Claim Four - Hearsay Testimony and Confrontation Clause**

Jones next contends that the trial court erred in admitting hearsay testimony as well as testimony that violated Jones' rights under the Confrontation Clause of the Sixth Amendment. Jones specifically contends that the testimony of Lolitha Mitchell, Formia Mack, and Carlitha Jones was erroneously admitted.  The court will consider the testimony of each of these witnesses in turn.

**A. Lolitha Mitchell**

Lolitha Mitchell ("Mitchell") testified that she told the police on the night of the shooting that she saw Jones shoot Chad Guy not because she saw the shooting but because the people around her said that Jones shot Guy.  R., 678.  Courteau did not object to this testimony.  *Id.*

In declining to review Jones' claim that Mitchell's testimony was erroneously admitted, the Louisiana appellate court cited the state's contemporaneous objection rule, LA. CODE CRIM. PROC. ANN. art. 841, which provides that "an irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  *Louisiana v. Jones*, 942 So. 2d at 1230.

As previously mentioned, the independent and adequate state ground doctrine provides that "a claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision."  *Finley v. Johnson*, 243 F.3d 215, 218 (5th Cir. 2001). In Louisiana, "it is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground."  *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002); *Wallace v. Cain*, 2009 U.S. Dist. LEXIS 96506, at *32 (W.D. La. 2009).  Thus, as long as a state court

relied on the contemporaneous objection rule in dismissing a claim, the claim is generally immune from federal review. *Id.* However, even if a state court judgment rests on an independent and adequate state rule of procedural default, a federal court may nevertheless review the defaulted claim if the petitioner either shows "cause" for the default and "prejudice attributed thereto" or that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice" because the petitioner is actually innocent. *Amos,* 61 F.3d at 338.

In relying on the contemporaneous objection rule in dismissing Jones' claims regarding Mitchell's testimony, the state appellate court relied on an independent and adequate state rule. Furthermore, the appellate court's judgment on this matter is not subject to review under the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the independent and adequate state ground doctrine because Jones failed to make any showing that either of these exceptions applied to his case.

### B. Formia Mack

Formia Mack ("Mack") testified that she told the police on the night of the shooting that she "guessed" Jones shot Guy.  When the prosecutor asked Mack why she only "guessed" Jones shot Guy, she responded, "Cause that's what I was told.  That's what everybody else was saying . . . ."  R., 688.  Courteau objected to this testimony as hearsay.  *Id.*  Judge Manning overruled the objection, observing that Mack "was trying to explain her answer.  It wasn't offered for the truth of the matter asserted but simply that it was said and therefore effected [sic] her understanding." *Id.*  Jones contends that Mack's testimony was inadmissible under both state law and the Confrontation Clause of the Sixth Amendment.

### 1. State Law Claim

Evidentiary errors of state law are generally not cognizable in federal habeas review,

unless the errors were so prejudicial as to result in a denial of a constitutionally fair proceeding. *Jackson v. Johnson*, 194 F.3d 641, 656 (5th Cir. 1999).  Indeed, "the erroneous admission of prejudicial testimony does not justify habeas relief unless the evidence played a 'crucial, critical, and highly significant' role in the jury's determination."  *Id*.  Thus, in order for Jones to obtain relief on his claim that Mack's testimony was inadmissible hearsay under Louisiana law, he would have to prove that the trial court's erroneous admission of this testimony was so prejudicial that it denied him the right to a fair proceeding.  Jones cannot make this showing because he cannot demonstrate that the admission of Mack's testimony was erroneous under state law in the first place.

"Hearsay is a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted."  LA. CODE EVID. ANN. art. 801(c).  In Louisiana, hearsay can be admissible if it is part of the res gestae. *State v. Kimble*, 407 So. 2d 693, 698 (La. 1981).  Res gestae is defined as "evidence concerning matters incidental to the main fact and explanatory of it, including acts and words which are so closely connected therewith as to constitute a part of the transaction, and without a knowledge of which the main fact would not be properly understood."  *Louisiana v. Reese*, 194 So. 2d 729, 733 (La. 1967).  The res gestae hearsay exception in Louisiana is "broad and includes not only spontaneous utterances and declarations made before or after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime, if the continuous chain of events is evident under the circumstances."  *Kimble*, 407 So. 2d at 698.  Moreover, "the admissibility of any particular evidence as a part of the res gestae is largely in the discretion of the trial judge."  *Reese*, 194 So. 2d at 734.

Mack testified that "everybody was saying" at the scene of the shooting that Jones had

shot Guy.  This testimony properly falls within Louisiana's res gestae hearsay exception because it was the testimony of a witness pertaining to what she heard immediately after the shooting. *See Kimble*, 407 So. 2d at 698.  Accordingly, Judge Manning's decision to admit Mack's testimony was not erroneous under Louisiana law, even if his rationale for the decision may have been incorrect.  *See State v. Hearold*, 603 So. 2d 731, 737-38 (La. 1992) (indicating that the hearsay "explanation exception" in Louisiana is limited to testimony from law enforcement officers).

### 2. Confrontation Clause

Testimony that is admissible under a hearsay exception may nevertheless violate the Confrontation Clause.  *Crawford v. Washington*, 541 U.S. 36, 68 (2004).  The Confrontation Clause prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination."  *Id.* at 53-54.  Testimonial statements include "*ex parte* in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially."  *Id.* at 51.  In contrast, "an off-hand, overheard remark . . . bears little resemblance to the . . . abuses the Confrontation Clause targeted" and is therefore not testimonial.  *Id.*

The out of court statements that Mack referenced in her testimony were made by patrons of the Faces nightclub who were discussing the shooting amongst themselves.  Rather than being the functional equivalent of *ex parte* in-court testimony, these statements were "off-hand, overheard" remarks which the declarants would not have reasonably expected to be used prosecutorially.  *See Crawford*, 541 U.S. at 51.  Mack's testimony was therefore not testimonial, and the trial court did not violate Jones' rights under the Confrontation Clause of the Sixth

Amendment in admitting Mack's testimony.

### C. Carlitha Jones

Jones contends that the trial court's admission of two different statements made by

Carlitha Jones were erroneous under both state law and the Confrontation Clause.  Jones first

disputes the trial court's admission of Carlitha Jones' testimony that she told the police on the

night of the shooting that Jones ran away from the scene of the shooting because that is what her

"friend" told her.  R., 697.

While Courteau did not object to this testimony, the Louisiana appellate court did not rely

on the contemporaneous objection rule to dispose of this particular claim, as it did for Lolitha

Mitchell's testimony.  Indeed, the state appellate court failed to address Jones' claim regarding

Carlitha Jones' statement about what she heard from her friend, even though Jones explicitly

raised this claim in his brief to the state appellate court.  R., 917.  Accordingly, the undersigned

will reach the merits of this particular claim.  *Miller v. Estelle*, 677 F.2d 1080, 1084 (5th Cir.

1982) (stating that a federal court is not barred from considering the merits of a ground for

habeas relief when the petitioner failed to make a contemporaneous objection, and the state

courts did not rely upon the contemporaneous objection rule in denying relief).

Carlitha Jones' testimony about what she heard from her friend is comparable to Formia

Mack's testimony about what "everybody else was saying" at the scene of the shooting in that

both witnesses reference out of court statements that were made immediately after the shooting.

Accordingly, this particular testimony by Carlitha Jones qualifies for the res gestae hearsay

exception because, like Mack's testimony, it concerns "matters incidental to the main fact and

explanatory of it . . . which are so closely connected therewith as to constitute a part of the

transaction, and without a knowledge of which the main fact would not be properly understood."

*Louisiana v. Reese*, 194 So. 2d at 733 (La. 1967).

20

Carlitha Jones's testimony about what she heard from her friend is also comparable to Mack's testimony because both witnesses mention out of court statements that were made by patrons of the Faces nightclub who were discussing the shooting amongst themselves. Carlitha Jones testimony about what she heard from her friend is therefore non-testimonial in that it references an "off-hand, overheard" remark rather than a formal statement that the declarant reasonably would have expected to be used prosecutorially. *Crawford*, 541 U.S. at 51. Accordingly, the admission of this particular testimony by Carlitha Jones did not violate Jones' rights under the Confrontation Clause.

Jones also disputes the trial court's admission of Carlitha Jones' testimony that Lolitha Mitchell told her on the night of the shooting that Mitchell saw Cecil Jones shoot Guy (R., 697) as well as Carlitha Jones' testimony that she told police officers on the night of the shooting that Mitchell told her that she had seen Cecil Jones with a gun. *Id.* at 705. Courteau objected to both statements in which Carlitha Jones related what Mitchell told her. *Id.* at 697, 702. Judge Manning overruled both objections on the basis that Carlitha Jones' testimony on this matter was intended to impeach Mitchell. *Id.* at 701-02.

As an initial matter, the undersigned notes that Carlitha Jones' testimony regarding what Mitchell told her on the night of the shooting did not violate Jones' rights under the Confrontation Clause. The Confrontation Clause does not bar the admission of out of court statements by witnesses who appear at trial. *Crawford*, 541 U.S. at 53-54. Accordingly, Carlitha Jones' testimony which mentioned Mitchell's out of court statements could not have violated Jones' rights under the Confrontation Clause because Mitchell appeared at trial.

The admission of Carlitha Jones' testimony regarding what Mitchell told her was also not erroneous under state law. As a result, Jones cannot contend that the admission of the testimony was so prejudicial as to result in a denial of a constitutionally fair proceeding because the

admission of the testimony was not erroneous in the first place.  *See Jackson v. Johnson*, 194

F.3d 641, 656 (5th Cir. 1999).

In Louisiana, "other extrinsic evidence, including prior inconsistent statements and

evidence contradicting the witness' testimony, is admissible when offered solely to attack the

credibility of a witness unless the court determines that the probative value of the evidence on the

issue of credibility is substantially outweighed by the risks of undue consumption of time,

confusion of the issues, or unfair prejudice."  LA. CODE EVID. ANN. art. 607(D)(2).

Carlitha Jones' testimony regarding what Mitchell told her was admissible as a prior

inconsistent statement.  It was clearly intended to attack the credibility of Mitchell, who had

testified at trial that she told the police on the night of the shooting that she saw Jones shoot Chad

Guy not because she saw the shooting but because the people around her said that Jones shot

Guy.  R., 678.  Furthermore, the prior inconsistent statement was very probative in that it was

relevant to a central issue at trial - whether Jones shot Guy.

**Claim Five - Jury Instructions**

The trial court granted the state's request to submit the following instruction on the

"aggressor doctrine" to the jury: "A person who is the aggressor or who brings on a difficulty

cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in

such a manner that his adversary knows or should know that he desires to withdraw and

discontinue the conflict."  LA. REV. STAT. ANN. § 14:21.  Jones contends that the trial court erred

in submitting this instruction to the jury because the state had failed to provide the court with any

evidence that Jones was indeed the aggressor.

Challenges to jury instructions may not form a basis for federal habeas corpus relief

unless a petitioner proves that the improper instruction rose to the level of a constitutional

violation.  *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).  Indeed, the only relevant inquiry for this

court is whether the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* Finally, when reviewing whether an allegedly erroneous jury instruction violated due process, the trial court's instruction "may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record." *Id.*

Jones simply cannot make the necessary showing of a constitutional violation to obtain relief on this claim. The facts set forth at trial sufficiently supported the theory that Jones was the aggressor. Mitchell testified that she told the police on the night of the shooting that Jones "just came out of the blue and just started shooting the gun." R., 681. Mack testified that she told the police on the night of the shooting that Chad Guy did not have a gun and "wasn't threatening anybody" when Jones shot him. *Id.* at 690. Furthermore, Jones' own incriminating statement, which indicated that he acted in self-defense, would also warrant the submission of the aggressor doctrine to the jury because the doctrine is essentially a corollary of the self-defense doctrine. Based on these facts, the undersigned fails to see how the submission of the aggressor doctrine was so unreasonable or so arbitrary as to "offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses." *Rochin v. California*, 342 U.S. 165, 169 (1952).

**Claim Six - Other Crimes Testimony**

At trial, Detective Gatwood provided the following testimony: (1) he first came into contact with Jones while he was assigned to a division within the Tulsa Police Department that investigated gangs; (2) Jones initially provided him with a California drivers' license assigned to a "Charles Andrews," and when Gatwood determined that the license was invalid, Jones told him that his name was "Demetrius Stewart"; and (3) after taking Jones to the police station, he learned that Jones was wanted for second degree murder as well as a "probation violation." R.,

23

730-33.  Jones contends that all three components of Gatwood's testimony should have served as the basis for granting his motion for a mistrial because they referenced his other crimes and thereby prejudiced the jury.

As an initial matter, the undersigned observes that Michael Courteau, Jones' trial counsel, did not object to components (1) and (2) of Gatwood's testimony.  In declining to review Jones' claims regarding these components, the Louisiana appellate court cited the state's contemporaneous objection rule, LA. CODE CRIM. PROC. ANN. art. 841.  *Louisiana v. Jones,* 942 So. 2d at 1232.  As previously mentioned, in Louisiana, "it is well-settled that the contemporaneous-objection rule is an independent and adequate state procedural ground." *Duncan v. Cain*, 278 F.3d 537, 541 (5th Cir. 2002); *Wallace v. Cain*, 2009 U.S. Dist. LEXIS 96506, at *32 (W.D. La. 2009).  Furthermore, the appellate court's judgment on this matter is not subject to review under the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the independent and adequate state ground doctrine because Jones failed to make any showing that either of these exceptions applied to his case.  Accordingly, the undersigned need not reach Jones' claims regarding components (1) and (2) of Gatwood's testimony.  The undersigned will, however, reach Jones' claim regarding Gatwood's testimony about Jones' "probation violation," to which Courteau did object.  R., 733.

Immediately after making his objection, Courteau made a motion for a mistrial, arguing that Gatwood's reference to Jones' probation violation ran afoul of LA. CODE CRIM. PROC. ANN. art. 770(2), which provides that "a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to . . . (2) another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible."  Judge Manning denied the motion, noting that a police officer is not a "court official" for purposes of Louisiana's

Code of Criminal Procedure.  R., 740-41.

Regardless of whether Gatwood's testimony was admissible under Louisiana law, the inquiry before this court focuses only on whether the denial of a mistrial in these circumstances rendered the trial fundamentally unfair under the Constitution.  *See Webb v. Blackburn*, 773 F.2d 646, 651-52 (5th Cir. 1985).  A trial may be rendered constitutionally unfair when the jury learns of and is potentially prejudiced by the defendant's prior crimes.  *Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir. 2007).  However, in federal habeas review, the admission of evidence of the defendant's prior crimes is subject to harmless error analysis.  *Id.*  Thus, Jones is not entitled to habeas relief unless he can demonstrate that the admission of evidence of his prior crimes "had a substantial and injurious effect or influence in determining the jury's verdict."  *Id.*  This he cannot do.

Gatwood's testimony about Jones' probation violation did not specifically mention the crime that caused Jones to be on probation.  Furthermore, the line of questioning that caused Gatwood to mention Jones' probation was not intended to culminate in a discussion of Jones' prior crimes but to establish the sequence of events leading to Jones' incriminating statement.  R., 733.  Finally, the prosecutor did not elicit any further testimony from Gatwood about Jones prior crimes.  The undersigned therefore cannot say that Gatwood's testimony "had a substantial and injurious effect or influence in determining the jury's verdict."  Jones is not entitled to any relief on this claim.

**Claim Seven - Insufficiency of the Evidence**

The Louisiana Second Circuit Court of Appeal found that there was sufficient evidence before the trial court to support Jones' conviction on the charge of second degree murder.  *Louisiana v. Jones*, 942 So. 2d 1215 (La. Ct. App. 2006).  Jones attacks this conclusion by arguing that the identification evidence presented at trial was insufficient to support a conviction,

25

and that the state failed to prove that Jones did not act in self-defense.

When a habeas petitioner asserts that the evidence presented to the court was insufficient to support his conviction, the limited question before a federal habeas court is whether the state appellate court's decision to reject that claim was an objectively unreasonable application of the clearly established federal law set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Williams v. Puckett*, 283 F.3d 272, 278-79 (5th Cir. 2002). A conviction is based on sufficient evidence if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The *Jackson* inquiry "does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993). Thus, a conviction may rest on sufficient evidence "even though the facts also support one or more reasonable hypotheses consistent with the defendant's claim of innocence." *Gibson v. Collins*, 947 F.2d 780, 783 (5th Cir. 1991).

The Louisiana appellate court invoked and applied the *Jackson* standard. *Louisiana v. Jones*, 942 So. 2d at 1222. The Louisiana court initially referenced the definition of second degree murder set forth in LA. REV. STAT. ANN. § 14:30.1 A.(1), which provides that "second-degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm." *Louisiana v. Jones*, 942 So. 2d at 1222-23. The court then concluded that the evidence presented at trial was sufficient to support a second-degree murder conviction against Jones by considering the following facts and evidence:

1. The defendant made an incriminating statement in which he identified himself as the person who shot Chad Guy. *Id.* at 1223.

2. Firearm identification evidence and related expert testimony indicated that Jones shot

the gun that killed Chad Guy and that Jones did not shoot Guy in self-defense because Guy was shot in his back.  *Id.*

3. Lolitha Mitchell and Formia Mack identified Jones as the shooter on the night of the shooting.  *Id.*

In summary, the evidence that the state presented at trial strongly suggested that Jones shot Guy and that Jones did not shoot Guy in self-defense.  The Louisiana appellate court therefore did not unreasonably apply *Jackson* when it reached the same conclusion.  No relief is permitted on this claim.

**Claim Eight - Good Time Eligibility**

With his next claim, Jones argues that his denial of good time eligibility involved an unreasonable application of *United States v. Blakely*, 542 U.S. 296 (2004), a case which affirmed the rule set forth in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Jones specifically contends that his denial of good time eligibility was based on a finding by the sentencing court, and not by the jury, that he used a firearm.

In Louisiana, "good time" refers to the diminution of a sentence based on a prisoner's "good behavior and performance of work or self-improvement activities, or both."  LA. REV. STAT. ANN. § 15:571.3.  Accordingly, the denial of good time eligibility does not increase a prisoner's penalty, but rather denies him the opportunity to reduce his penalty.  Thus, the undersigned fails to see how the sentencing court's denial of good time eligibility to Jones involved an unreasonable application of *Blakely*.

Moreover, Jones' claim lacks a factual basis.  In determining that Jones was not eligible for good time, the sentencing court stated, "In accordance with Article 890.1 of the Louisiana

27

Code of Criminal Procedure, the Court herein designates that the offense of Second Degree Murder is a crime of violence as defined by R.S. 14:2(13).  Further, under the provisions of Article 890.1(B) and the Court noting the application of La. R.S. 15:571.3, the sentencing Court denies any eligibility for diminution of sentence for good behavior."  R., 222.  Second degree murder is indeed a crime of violence under the Louisiana Revised Statutes.  LA. REV. STAT. ANN. § 14:2.  Furthermore, the Louisiana Code of Criminal Procedure provides that if a person is convicted of a crime of violence, "the sentencing court may deny or place conditions on eligibility for diminution of sentence for good behavior unless diminution of sentence is prohibited by R.S. 15:571.3(C) or (D)."  LA. CODE CRIM. PROC. ANN. art. 890.1.  Finally, section 15:571.3(C)(1)(b) provides that diminution of sentence shall not be available to prisoners who have been convicted of second degree murder.  LA. REV. STAT. ANN. § 15:571.3(C)(1)(b).  Thus, the sentencing court's denial of good time eligibility to Jones was not based on a judge-found fact that Jones used a firearm but on the jury's finding that Jones committed second degree murder. Jones is not entitled to any relief on this claim.

**Claim Nine - Motion for Release from Custody without Bail**

With his first post conviction claim, Jones argues that the trial court violated his due process rights when it denied his motion to be released from custody without bail.

On May 31, 2003, Judge Manning held a hearing on Jones' motion for release from custody without bail.  R., 256.  At the hearing, Jones contended that he was being held in custody in violation of LA. CODE CRIM. PROC. ANN. art. 701(1)(a) - which provides that "when the defendant is continued in custody subsequent to an arrest, an indictment of information shall be filed . . . within sixty days of the arrest if the defendant is being held for a felony" - because more than sixty days had elapsed between the date of his arrest (January 7, 2003) and the date of his indictment (March 14, 2003).  R., 257.  Judge Manning denied Jones' motion, citing *State v.*

28

*Varmall*, 539 So. 2d 45, 45 (La. 1989), which provides that when an indictment is filed after the

article 701(1)(a) statutory period, but before the hearing on the defendant's motion to release, the

defendant is not entitled to be released without bail.  R., 258-59.

Although Jones did not raise this claim on appeal, he did raise it in his petition for post-

conviction relief.  Judge Manning did not reach the merits of the claim, citing LA. CODE CRIM.

PROC. ANN. art. 930.4(C), which provides for dismissal of a post conviction application if it

raises a claim which could have been raised on direct appeal.  R., 1118.

In Louisiana, article 930.4(C) is clearly an independent and adequate state procedural

ground to deny relief.  *Bell v. Cain*, 2002 U.S. Dist. LEXIS 16699, at *16-17 (E.D. La. Aug. 29,

2002) (reviewing six cases which referenced article 930.4(C) and observing that five of the six

cases applied the procedural bar); *Gilkers v. Cain*, 2006 U.S. Dist. LEXIS 51161, at *6 (E.D. La.

May 30, 2006); *see* discussion on the independent and adequate state ground doctrine in Claim

One, *supra*.  Furthermore, the state court's reliance on article 930.4(C) is not subject to review

under the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the

independent and adequate state ground doctrine because Jones failed to make any showing that

either of these exceptions applied to his case.  *See* discussion on cause and prejudice doctrine in

Claim One, *supra*.

**Claim Ten - Absence of Colloquy at Hearing on Motion for Arrest of Judgment**

Jones filed a pro se motion for arrest of judgment on November 2, 2005.  R., 204.  On

November 3, 2005, the state court held a hearing on the motion.  R., 847.  Jones contends that his

due process rights were violated when the state court did not conduct a colloquy advising Jones

of the disadvantages of self-representation at the hearing on his pro se motion.

For a waiver of the right to trial counsel to be valid, the defendant must be "made aware

of the dangers and disadvantages of self-representation, so that the record will establish that 'he

knows what he is doing and his choice is made with eyes open.'" *Faretta*, 422 U.S. at 835.

However, the Supreme Court has "never held that prisoners have a constitutional right to counsel when mounting collateral attacks upon their convictions." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  Indeed, Supreme Court precedent "establish[es] that the right to appointed counsel extends to the first appeal of right, and no further." *Id.*

Jones did not have a constitutional right to counsel at the hearing because his pro se motion was a collateral attack on his conviction.  Accordingly, the court was not required to conduct a colloquy advising Jones of the pitfalls of self-representation, as it was required to do when Jones requested to represent himself at trial, because at the hearing Jones did not have a constitutional right to counsel in the first place.

**Claim Eleven - Present Recollection Refreshed**

The trial court allowed the state to refresh the memories of Mitchell, Mack, and Carlitha Jones with their prior recorded statements to the police.  Jones argues that the testimony that Mitchell, Mack, and Carlitha Jones subsequently provided violated his due process rights because the recorded statements were inadmissible under state law as devices to refresh the witnesses' memories.

As previously mentioned, evidentiary errors of state law are not cognizable in federal habeas review unless the error was so prejudicial that it denied the defendant the right to a fair proceeding.  *Jackson v. Johnson*, 194 F.3d at 656.  Jones cannot make this showing because he cannot demonstrate that the state court's admission of the witnesses' previously recorded statements was erroneous under state law in the first place.

Louisiana has a "recorded recollection" exception to its hearsay rule.  A recorded recollection is "a memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately,

30

shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly."  LA. CODE EVID. ANN. art. 803(E)(5).  Contrary to Jones' contention, in Louisiana a witness need only profess partial forgetfulness as to the content of the recorded recollection for the recollection to be admissible as a device to refresh the witness' memory.  *Id.* at cmt. (5)(d); *Bond v. Brookshire Grocery Co.*, 782 So. 2d 707, 712 (La. Ct. App. 2001).

Mitchell, Mack, and Carlitha Jones all professed partial forgetfulness as to the content of their recorded statements to the police.  R., 679, 688, 704.  Accordingly, under the Louisiana Code of Evidence, the state was entitled to use these statements to refresh the witnesses' memories.

**Claim Twelve, Thirteen, and Fourteen - Ineffective Assistance of Counsel**

Jones argues that Courteau was ineffective on three grounds - failure to object to or cross-examine the police officer who received Jones' inculpatory statement on the basis that the statement was made involuntarily; failure to investigate the state's witnesses; and interference with Jones' right to testify on his own behalf.  The undersigned will review each of these claims in turn.

### A. The Standard

Ineffective assistance of counsel claims may be considered under 28 U.S.C. § 2255. *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996).  To prevail on a claim of ineffective assistance of counsel, a defendant must show both (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that the ineffectiveness of counsel prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984).

If the defendant does not make a sufficient showing as to one prong of the test, the other prong need not be considered.  *Tucker v. Johnson*, 115 F.3d 276, 281 (5th Cir. 1997).  The

31

prongs of the test also need not be analyzed in any particular order. *Goodwin v. Johnson*, 132 F.3d 162, 172 n.6 (5th Cir. 1997).

To prove deficient performance, the defendant must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687. There is a strong presumption that counsel performed adequately and exercised reasonable professional judgment. *Virgil v. Dretke*, 446 F.3d 598, 608 (5th Cir. 2006). Furthermore, "a conscious and informed decision on trial tactics and strategy cannot be the basis of constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness."

To prove prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome" and is less than a preponderance of the evidence. *Id.* at 693-94. Finally, prejudice exists only if the defendant demonstrates that he would have received less jail time. *Glover v. United States*, 531 U.S. 198, 203 (2001).

### B. Failure to Object to and to Cross-Examine Detective Gatwood

At trial, the state prosecutor questioned Gatwood about the circumstances that led to the incriminating statement that Jones made to Gatwood:

> The State: Prior to receiving any information from your fingerprint technician and any information from AFIS did Mr. Jones make any statements to you?
>
> Gatwood: Yes, he finally told me who he was. He told me his name was Cecil Jones and that he was from Monroe.
>
> The State: Did he say anything else?
>
> Gatwood: At that point we went into what I consider an interview room of the police

department's detective division.  We sat down and he told me that - he was sort of crying and he told me that you're going to find out who I am, I'm wanted for a murder in Monroe, Louisiana, that he killed a man outside a nightclub, that he was drunk at the time and that this man pulled a gun out on him and at that time he had a 9mm Glock on his person.  He pulled the gun out and the two individuals started to struggle with each other and the handgun went off striking the subject in the side, or the victim in the side.

R., 732.

Jones argues that Michael Courteau, his trial counsel, was ineffective for failing to object to Gatwood's testimony on the basis that the state failed to demonstrate that Jones voluntarily made the incriminating statement.  Jones also argues that Courteau was ineffective for failing to cross-examine Gatwood regarding the voluntariness of Jones' incriminating statement.  These arguments, however, are unavailing.

The record clearly indicates that Courteau's trial strategy was to demonstrate that Jones shot Guy in self-defense.  For example, during cross-examination of Carlitha Jones and Joe Finister, the bouncer at the nightclub where the shooting occurred, Courteau elicited testimony that Jones shot Guy while a "brawl" occurred.  *Id.* at 655, 706.  Courteau also elicited testimony from Dr. Hayne, a specialist in forensic pathology, that the marks found on Jones' body were "consistent with the type of abrasions that one might receive in a melee or fight."  *Id.* at 763. Finally, in his closing statement, Courteau explicitly argued self-defense.  Courteau began by describing the context of the shooting as "like a wild west out there with everybody shooting." *Id.* at 807.  Courteau then explicitly conceded that Jones shot Guy by observing, "I don't think here that you've got a question of did Cecil Jones shoot Chad Guy.  I mean he told the officer he shot him."  *Id.*  Courteau also pointed to Gatwood's testimony that Jones told him that he acted in self-defense, as well as the testimony of several witnesses who indicated that Jones shot Guy while a brawl occurred.

Arguing self-defense may be a sound trial strategy and therefore preclude a finding of deficient performance under *Strickland*'s first prong when the facts of the case indicate that the

33

defendant harmed the victim. *Mayabb v. Johnson*, 168 F.3d 863, 869 (5th Cir. 1999); *Lewis v. Curtis*, 37 Fed. Appx. 154, 158 (6th Cir. 2002).

In this case, the record strongly indicated that Jones shot Guy, even if one excludes Jones' incriminating statement.  Firearm identification evidence and related expert testimony indicated that Jones shot the gun that killed Guy.  In addition, Mitchell and Mack both identified Jones as Guy's shooter on the night of the shooting.  Accordingly, Courteau's decision to argue self-defense was sound trial strategy.  Courteau's resulting decisions not to object to Gatwood's testimony that Jones told him that he acted in self-defense or to cross-examine Jones on the voluntariness of Jones' statement were therefore also sound trial strategy.  Jones is not entitled to any relief on this claim.

### C. Failure to Investigate the State's Witnesses

Jones argues that Courteau was ineffective for failing to investigate Mitchell, Mack, and Carlitha Jones.  Jones specifically contends that if Courteau had investigated these witnesses prior to trial, Courteau would have learned information which would have enabled him to prevent the admission of their alleged hearsay testimony.

As to *Strickland*'s first prong, Jones cannot make the necessary showing of deficient performance for two reasons.  First, Jones cannot demonstrate that Courteau failed to investigate the witnesses in the first place.  Courteau's objections to the alleged hearsay testimony of Mack (688) and Carlitha Jones (697, 705) demonstrated a knowledge of the witnesses and their likely testimony that could have only been acquired through a pretrial investigation.  Second, Jones does not "allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *See United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Rather than point to specific information which Courteau would have learned through a more thorough investigation of the witnesses, Jones merely asserts that a proper investigation

34

would have provided Courteau with "crucial information" that would have enabled him to object successfully to the alleged hearsay statements of the witnesses.

However, even if Jones were able to make the necessary showing under *Strickland*'s first prong, he would not be able to show prejudice as required by *Strickland*'s second prong.  The out of court statements contained in the testimony of Mitchell, Mack, and Carlitha Jones were admissible under the res gestae hearsay exception.  *See* discussion on the res gestae hearsay exception in Claim Four, *supra*.  The undersigned fails to see how a more thorough investigation by Courteau would have altered this finding.

### D. Interference with Jones' Right to Testify

Jones' final ineffective assistance of counsel claim is that Courteau interfered with his right to testify on his own behalf.  Although Jones did not raise this claim on appeal, he did raise it in his petition for post-conviction relief.  Judge Manning did not reach the merits of the claim, citing La. Code Crim. Proc. Ann. art. 930.4(c), which provides for dismissal of a post conviction application if it raises a claim which could have been raised on direct appeal.  R., 1118.

As previously stated, article 930.4(c) is an independent and adequate state procedural ground to deny relief.  *See* discussion on article 930.4(c) in Claim Nine, *supra*.  Furthermore, the state court's reliance on article 930.4(C) is not subject to review under the "cause and prejudice" or "fundamental miscarriage of justice" exceptions to the independent and adequate state ground doctrine because Jones failed to make any showing that either of these exceptions applied to his case.  *Id.*

### Claim Fifteen - Cumulative Effect of All Errors

Jones' final claim alleges that the cumulative effect of all errors committed by the state court and by his counsel rendered his trial fundamentally unfair.  There is no merit to Petitioner's other claims and thus, no cumulative prejudice can be found.

**CONCLUSION**

For the reasons stated above, it is recommended that the petitioner's petition for writ of habeas corpus (Doc. #1) under 28 U.S.C. § 2254 be **DENIED and DISMISSED with prejudice**.  Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 13th day of January, 2010.


KAREN L. HAYES
U. S. MAGISTRATE JUDGE